IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HELEN McCULLOUGH,<br><br>                    Plaintiff,<br><br>        v.<br><br>MARTIN J. O'MALLEY, Commissioner<br>of Social Security,[1]<br><br>                    Defendant. | CIV. NO. 23-00298 JMS-KJM<br><br>ORDER REVERSING THE<br>ADMINISTRATIVE LAW JUDGE'S<br>DECISION AND REMANDING<br>FOR FURTHER PROCEEDINGS |

**ORDER REVERSING THE ADMINISTRATIVE LAW JUDGE'S
DECISION AND REMANDING FOR FURTHER PROCEEDINGS**

## I.  INTRODUCTION

Plaintiff Helen McCullough ("Claimant") seeks judicial review under

42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security,

Martin J. O'Malley (the "Commissioner").  The Commissioner adopted

Administrative Law Judge David Romeo's ("ALJ") August 16, 2022 written

decision finding Claimant not disabled.  Claimant argues: (1) the Appeals Council

erred in not remanding Claimant's claim where her post-decision sworn affidavit

("Post-Decision Affidavit") shows she cannot actually do the work the ALJ found

---

[1]  Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (providing that action survives regardless of any change in the person occupying the office of Commission of Social Security).

she can perform; and (2) the ALJ improperly rejected Claimant's testimony.  ECF No. 8 at PageID.684.  Claimant asserts that neither error is harmless, and that remand is necessary for proper consideration of her testimony and whether she is capable of doing past work.  *Id*. at PageID.679.

The court concludes that (1) the determination of Claimant's residual functional capacity, (2) the determination that, based on this residual functional capacity, she is able to perform her past relevant work, and (3) the consequential finding of not disabled are not supported by substantial evidence.  Accordingly, the court REVERSES the Commissioner's final decision and REMANDS for further proceedings.

## II.  <u>BACKGROUND</u>

### A.    The Social Security Disability Determination Framework and the ALJ's Findings and Decision

In late 2019, at age 59, Claimant applied for Disability Insurance Benefits under Title II of the Social Security Act.  Administrative Record ("AR")[2] 184–185.  Claimant alleges a disability based on osteoarthritis and hypertension as of November 1, 2017.  AR 184, 207.

The Social Security Administration ("SSA") requires an ALJ to assess

---

[2]  The AR is numbered sequentially from pages 1 to 648 and is available at ECF No. 6.

disability[3] through a five-step sequential analysis, which asks:

> (1)     Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled and not entitled to disability insurance benefits.  If not, proceed to step two.
>
> (2)     Has the claimant's alleged impairment been sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.
>
> (3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled and therefore entitled to disability insurance benefits.  If not, the claimant's residual functional capacity is determined in preparation for step four.
>
> (4)     Does the claimant possess the residual functional capacity to perform her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> (5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

---

[3] A claimant is "disabled" for purposes of the Social Security Act if (a) she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and (b) the impairment renders her incapable of performing the work that she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520 (explaining the five-step sequential evaluation process used to decide whether a claimant is disabled), 416.920 (same)); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (stating that the 2017 revised Social Security regulations do not alter the familiar "five-step sequential evaluation process," and that the purpose of 20 C.F.R. § 404.1520(a)(1) is to explain that process).  For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the claimant reaches step five, the burden shifts to the Commissioner.  *Id.* at 1099.

At Step 1, the ALJ found that Claimant has not engaged in substantial gainful activity since November 1, 2017, the alleged onset date of alleged disability.  AR 17.  At Step 2, the ALJ found that Claimant has severe impairments of status-post bilateral hip replacement surgery, chronic bronchitis, carpal tunnel syndrome, and lumbar degenerative disc disease.  *Id.*  The ALJ also noted allegations of chronic obstructive pulmonary disease, hypertension, left hand mild osteoarthritis of the first carpometacarpal and distal interphalangeal joints of the index and middle fingers, but found these non-severe.  AR 17–18.

At Step 3, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of the *Listing of Impairments* for 1.00 (musculoskeletal disorders) and 14.00 (immune system disorders) contained in 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  AR 18.  In preparation for Step 4, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" under 20 C.F.R. § 404.1529 (outlining how the SSA evaluates symptoms, including pain) and Social Security Ruling ("SSR") 16-3p, 81 Fed. Reg. 14166 (Mar. 16, 2016) ("Evaluation of Symptoms in Disability Claims").[4]  AR 18.  The ALJ determined Claimant's residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[5] except: occasionally climb ramps or stairs; not climb ladders, ropes, scaffolds;

---

[4]  "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation omitted).

[5]  The SSA and Dictionary of Occupational Titles ("DOT") both classify the physical exertional requirements of work as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  Sedentary work is defined as work that involves

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id*. at § 404.1567(a).

occasionally balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to environmental irritants, heights, and hazards; frequently reach, push, pull, handle, finger, and feel with both upper extremities; and require the use of a cane for ambulation. *Id*.

> The ALJ then determined Claimant's past relevant work at Step 4:
>
> The claimant has past relevant work as an Accounting Clerk, which is classified as DOT[6] #216.482-010, sedentary, and SVP 5. The vocational expert testified that a person with the above residual functional capacity would be capable of performing the claimant's past relevant work of Accounting Clerk as it Is [sic] generally performed. Thus, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

AR 21. Accordingly, at Step 5 the ALJ found Claimant not disabled as of November 1, 2017. *Id*.

## B.   Procedural Background

On March 17, 2021, the Commissioner denied Claimant's claim and on April 9, 2021, denied the claim on reconsideration. AR 50, 70. Claimant timely requested a hearing that took place on July 14, 2022, at which Claimant and vocational expert, Brenda Cartwright, testified. AR 27–49. On August 16, 2022,

---

[6] The DOT "is typically the starting point for [vocational experts] to identify the occupations relevant for each claimant's residual functional capacities. The DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number." *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) (internal citations omitted).

the ALJ issued his written decision finding Claimant not disabled.  AR 12–26.  The

Appeals Council denied Claimant's request for review on June 1, 2023, which

rendered the ALJ's Decision the final decision of the Commissioner.  AR 1–6.

Claimant commenced her action for judicial review on July 18, 2023.  ECF No. 1.

Claimant filed her Opening Brief on October 12, 2023.  ECF No. 8.

The Commissioner filed an Answering Brief on November 13, 2023.  ECF No. 10.

Claimant filed a Reply Brief on December 26, 2023.  ECF No. 13.  The court held

oral argument on February 5, 2024.  The court ordered the parties to file

supplemental briefing, which Claimant submitted on February 19, 2024, ECF No.

17, and the Commissioner on February 20, 2024, ECF No. 18.

### III.  <u>STANDARD OF REVIEW</u>

Congress has provided a limited scope for judicial review of the

Commissioner's decision to deny benefits under the Social Security Act.  *See* 42

U.S.C. § 405(g).  "For highly fact-intensive individualized determinations like a

claimant's entitlement to disability benefits, Congress places a premium upon

agency expertise, and, for the sake of uniformity, it is usually better to minimize

the opportunity for reviewing courts to substitute their discretion for that of the

agency."  *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir.

2014) (internal quotation and citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (2015). First, courts "'leave it to the ALJ to determine credibility,[7] resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id*. (quoting *Treichler*, 775 F.3d at 1098). Second, courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence means "more than a mere scintilla but less than a preponderance[;] it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec*., 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation and citation omitted). If the evidence is "susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). And third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless. *Brown-Hunter*, 806 F.3d at 492. An error is harmless if it is "'inconsequential to the ultimate nondisability determination'" or if "despite the legal error, 'the

---

[7] The term "credibility" was eliminated, effective March 27, 2017, from the SSA's sub-regulatory policy, with the clarification that "subjective symptom evaluation is not an examination of an individual's character," but "rather is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work." SSR 16-3p, 81 Fed. Reg. at 14167 & n.1.

agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id*. (quoting *Treichler*, 775 F.3d at 1099).

Nevertheless, "[a] clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.* (citation omitted).  Consequently, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id*. (citing *Stout*, 454 F.3d at 1054); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (stating that a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ").

The court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), because "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103) (some brackets in original).  Thus, "[b]ecause we cannot engage in such substitution or speculation, such error will usually not be harmless." *Id*.

# IV. DISCUSSION

Claimant raises several issues for review.  Because it is dispositive, the court addresses only the basis for remand: the determination of Claimant's residual functional capacity and finding that she can perform past relevant work as an accounting clerk.

## A.   Claimant's Post-Decision Affidavit Is Part of the Administrative Record

At the outset, the court reviews the Commissioner's final decision for substantial evidence based on the record as a whole.  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012) (citing *Tackett*, 180 F.3d at 1097).  The record includes Claimant's Post-Decision Affidavit submitted to the Appeals Council in her request for review.  *See* AR 288–289 (Post-Decision Affidavit); AR 290–292 (letter submitted in further support of Request for Review) (citing 20 C.F.R. § 404.970(a);[8] *see also* 20 C.F.R. § 416.1470(a) (same).  As stated by the Ninth Circuit:

---

[8]  20 C.F.R. § 404.970(a) provides:

> (a) The Appeals Council will review a case at a party's request or on its own motion if—
>
>> (1) There appears to be an abuse of discretion by the administrative law judge or administrative appeals judge who heard the case;
>>
>> (2) There is an error of law;

(continued . . .)

> SSA regulations permit a claimant to submit additional evidence to the Appeals Council if the claimant shows good cause for not having submitted it earlier.  20 C.F.R. § 404.970(b); *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162–63 (9th Cir. 2012) (holding that evidence submitted for the first time to the Appeals Council becomes part of the administrative record for the purposes of judicial review).  When good cause is shown, regulations provide that the Appeals Council will review a case based on additional evidence submitted to the Council for the first time if the evidence is "material," it relates to a time period on or before the ALJ's decision, and "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

*White v. Kijakazi*, 44 F.4th 828, 835–36 (9th Cir. 2022).  Here—without making a specific finding of good cause—the Appeals Council "considered the reasons" set forth in the Post-Decision Affidavit and "found that the reasons do not provide a basis for changing the Administrative Law Judge's decision."  AR 1.  And where the Appeals Council "considers" evidence in "denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district

---

(3) The action, findings or conclusions in the hearing decision or dismissal order are not supported by substantial evidence;

(4) There is a broad policy or procedural issue that may affect the general public interest; or

(5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*, 682 F.3d at 1159–60;[9] *see also Schenone v. Saul*, 2019 WL 2994492, at *6 (E.D. Cal. July 9, 2019) (stating that the word "considered" is a term of art in Social Security cases such that evidence "considered" by the Appeals Council is part of the administrative record and thus subject to judicial review); *Jose Francisco C. v. Saul*, 2019 WL 3858195, at *4–5 (C.D. Cal. Aug. 16, 2019); *Michael T. v. Comm'r Soc. Sec. Admin.*, 2023 WL 355838, at *3 (D. Or. Jan. 23, 2023); *Treasure L. v. Saul*, 2020 WL 3033669, at *6 (D. Or. June 5, 2020); *Wischmann*, 68 F.4th at 504.  Thus, the court considers the Post-Decision Affidavit as part of the administrative record for review.[10]

And, as set forth below, having reviewed Claimant's Post-Decision Affidavit, the court finds that the Commissioner's determination of Claimant's past

---

[9]  Title 20 C.F.R. § 404.970(b) was amended, effective January 17, 2017, to impose a good cause requirement.  *See* 85 Fed. Reg. 73157 (Dec. 16, 2016).  Thus, the statement in *Brewes* that "Claimants need not show 'good cause' before submitting new evidence to the Appeals Council," 682 F.3d at 1162, is no longer valid as it was based on the old regulation.  But the court otherwise follows the principles set forth in *Brewes*.

[10]  Further, the Commissioner does not dispute that the Appeals Council found good cause for submission of the Post-Decision Affidavit; in fact, at oral argument he conceded that it is part of the record to be considered by the court on appeal.  In his supplemental brief, he nonetheless argues that the Post-Decision Affidavit is "less persuasive" than the administrative hearing evidence under *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).  *See* ECF No. 18 at PageID.766.  But *Macri* addressed medical reports issued by claimant's treating physician post-decision, which the Ninth Circuit found, made them "less persuasive."  *Id.* at 544.  Here, Claimant provided information that relates to a time period before the ALJ's decision, not after.  *See* 20 C.F.R. § 404.970(a)(5).  Regardless, even if it was proper for the court to accord less weight to the Post-Decision Affidavit, it would not alter the court's ultimate conclusion of reversal and remand.

relevant work as an accounting clerk is not supported by substantial evidence, warranting remand.  *See Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) ("We may overturn the ALJ's decision only if it is not supported by substantial evidence or if it is based on legal error.") (citations and quotation marks omitted)).  Further, the error is not harmless.

## B.    Claimant's Past Relevant Work

At Step Four, "a claimant has the burden to prove that she cannot perform her past relevant work 'either as actually performed or as generally performed in the national economy.'"  *Id.* (citation omitted).  When evaluating a claimant's ability to perform past relevant work, an ALJ may use either the "actually performed test" or the "generally performed test," as explained in SSR 82-61, 1982 WL 31387 (1982):

> A former job performed . . . by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.  Under [the "generally performed"] test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

1982 WL 31387, at *2.

The "'generally performed test' is designed for situations where a claimant's past job was especially demanding when compared with industry

standards." *Stacy*, 825 F.3d at 569 (citing *Jack v. Colvin*, 2015 WL 5567748 (C.D. Cal. Sept. 22, 2015) (concluding that past work was properly categorized as "athletic director" at a sedentary level of exertion even though the claimant actually performed the job at a heavy level of exertion)).

Although the ALJ may choose to use either the "actually performed" or the "generally performed" test, SSR 82-61, an ALJ may not classify a past occupation "according to the least demanding function." *Valencia v. Heckler*, 751 F.2d 1082, 1087 (9th Cir. 1985) (holding that the Appeals Council erred in concluding that plaintiff's past relevant work was "light" based on the lightest task she had previously performed as a tomato sorter while also performing the "medium" job of agricultural laborer). And reconciling the "generally performed" test with *Valencia*, while difficult, "is not impossible": *Valencia* does not apply in cases where (1) the "least demanding function" is a task that the claimant actually performed most of the time; and (2) the DOT defines the claimant's past job as requiring only that least demanding function. *Stacy*, 825 F.3d at 570. Stated differently, "the least demanding aspect" of a claimant's past job is "something she did less than half the time, and an ALJ errs in equating that one task with a full time job." *Id*.

At the administrative hearing, Claimant testified about why she can no longer work:  Both hips had been replaced and although the right hip is fine, the left hip is worse than before replacement.  AR 39.  Claimant testified that she could not walk prior to both hips being replaced, and after the left hip replacement, she continues to have difficulty walking and needs a cane to ambulate.  AR 40.  She further testified that she cannot stand in one place ("that would send me into nightmares") and she cannot sit for longer than 20 to 30 minutes without having to stand up, *id.*, and that all of her pain is concentrated in her entire left side and back.  AR 41.

The ALJ also elicited testimony about Claimant's former employment.  She testified that she did "accounts receivable and accounts payable. And [worked] one on one with the property managers in connection with the payrolls that were coming through for the properties" from 2006 to 2010.  AR 37. Based on this testimony, the vocational expert ("VE") described Claimant's past work, in part, as an accounting clerk, which the VE classified as sedentary.  AR 45. Whether classified as sedentary or light work, the VE testified that a hypothetical individual with the same exceptions imposed by the ALJ on Claimant's residual functional capacity would be able to do the work of an accounting clerk.  AR 47. The ALJ thus determined at Step 4—largely based on the VE's assessment—that

Claimant is capable of performing past relevant work as an accounting clerk, a

sedentary position.  AR 21.

> The DOT defines Accounting Clerk (clerical) as someone who:
>
> Performs any combination of following [sic] calculating,
> posting, and verifying duties to obtain financial data for
> use in maintaining accounting records: Compiles and
> sorts documents, such as invoices and checks,
> substantiating business transactions.  Verifies and posts
> details of business transactions, such as funds received
> and disbursed, and totals accounts, using calculator or
> computer.  Computes and records charges, refunds, cost
> of lost or damaged goods, freight charges, rentals, and
> similar items.  May type vouchers, invoices, checks,
> account statements, reports, and other records, using
> typewriter or computer.  May reconcile bank statements.
> May be designated according to type of accounting
> performed, such as Accounts-Payable Clerk (clerical);
> Accounts-Receivable Clerk (clerical); Bill-Recapitulation
> Clerk (utilities); Rent and iscellaneous [sic] Remittance
> Clerk (insurance); Tax-Record Clerk (utilities).

DOT Accounting Clerk (clerical) 216.482-010, https://www.dol.gov/agencies/oalj/

PUBLIC/DOT/REFERENCES/DOT02A [https://perma.cc/82SB-C5MN].

Although the DOT is "the best source for how a job is generally performed," *Pinto*

*v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quotation marks omitted), an ALJ

must be cognizant that "[e]very occupation consists of a myriad of tasks, each

involving different degrees of physical exertion."  *Valencia*, 751 F.2d at 1086.

> In her Post-Decision Affidavit, Claimant clarified the physical nature

of her job, claiming that "although [her] job title was cashier, not accountant," she

16

"did not get to finish describing [her] duties [at the hearing.]"[11]  AR 288.  Claimant

asserted that as a "cashier," she was required to inspect work done to invoice it,

which involved "a lot of walking" on "huge properties" and having to climb

ladders, stepstools, and stairs, stooping down, potentially spending "all day on

[her] feet standing, walking, climbing, bending, squatting."  AR 288–289.  In

addition, "each month [she] had to attend each property's Association Board

meeting at the property," which "meant walking the entire property and stopping to

inspect anything that would be of interest during the meeting."  AR 289.  Claimant

alleged that she also transported various items ranging "from a small file folder to

big, heavy boxes of supplies"—from the main office to any particular property,

and moving ladders and stepstools entailed "lift[ing] at least 20 pounds."  *Id.*

Finally, Claimant stated that she was "doing all these things at least or more than

half of the time [she] was working."  *Id*.  The work as described in the Post-

Decision Affidavit does not correlate with the DOT's description of an accounting

---

[11]  There was no indication at the administrative hearing that Claimant was not given an
opportunity to finish her job description.  *See* AR 37 (ALJ asking vocational expert if she had
any questions for Claimant, whereupon she answered in the negative and Claimant's attorney
asked no further questions nor objected).  Nor did there appear to be any technical issues that
disrupted or prematurely cut off the telephone hearing proceedings that would have prevented
Claimant from elaborating on her job description when asked.  *See* AR 36–37.

clerk, even with the ALJ's exceptions of not climbing ladders or only occasional stooping, kneeling, crouching, or crawling.[12]

      When "some occupations have tasks that do not neatly align with the DOT's description for any single job," such as here, under the Social Security Administration Program Operations Manual System ("POMS") an ALJ considers whether a claimant's work is a "composite job." *Goodwill v. Comm'r of Soc. Sec.*, 2023 WL 3582521, at *2 (E.D. Cal. May 22, 2023) (citing POMS DI 25005.020, https://secure.ssa.gov/poms.NSF/lnx/0425005020 [https://perma.cc/3SYC-H8DV]).  Claimant raised this argument in her request for review to the Appeals Council.  AR 290 ("[Claimant's] 'accounting' job was a composite job that, based on the ALJ'S [residual functional capacity] finding, she could not return to performing.").  "[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." *Laurie A.M. v. Kijakazi*, 2022 WL 2610246, at *3 (C.D. Cal., July 8, 2022) (quoting SSR 82-61) (quotation marks omitted).  Accordingly, they are "evaluated according to the particular facts of each individual case." *Id*. (quoting SSR 82-61).

      While "it is not always obvious whether a particular job is a DOT job

---

[12] "Occasionally means occurring from very little up to one third of the time." *Long v. Comm'r of Soc. Sec*., 2023 WL 6534201, at *10 n.3 (S.D. Cal. Oct. 6, 2023) (citations omitted). The Post-Decision Affidavit reflects that Claimant engaged in work more strenuous than sedentary work "at least or more than half" the time at her previous job.  AR 289.

having a few additional tasks in the actual performance or a composite job having no single counterpart in the DOT," a "particular job does not become composite merely because, as actually performed, the particular job included tasks not generally performed in such a job." *Id.* at *4 (citing *Torres v. Saul*, 2021 WL 2859683, at *6 (D.N.M. July 8, 2021) (reasoning "that Plaintiff 'described her work as she *actually* performed the jobs[,]' as opposed to how they are *generally* performed, does not transform them into composite jobs") (alterations in original)). "Even so, it is error to define a claimant's past relevant work according to the 'least demanding aspect' of a past job when that aspect 'was something the claimant did less than half the time.'" *Id.* (quoting *Stacy*, 825 F.3d at 570).  And while there is no Ninth Circuit bright-line rule for what constitute "significant elements" or "main duties" of a job to categorize it as composite, "district courts generally consider the 'fundamental nature' of the work at issue, focusing on how much time a plaintiff spends doing the tasks claimed to support a composite-job finding." *Goodwill*, 2023 WL 3582521, at *2 (collecting cases); *see also Douglas v. Colvin*, 2016 WL 11788749, at *7 (E.D. Wash. Aug. 15, 2016) (instructing the ALJ "to take additional testimony regarding the proportionality of each task performed and determine whether or not one task was performed at a high enough rate that the other task was not sufficient to change the fundamental nature of the work").

Here, assuming the truth of the Post-Decision Affidavit, the least demanding aspect of Claimant's job (accounting clerk) was something she performed less than half the time; and the physical nature of the work she described in the Post-Decision Affidavit did not appear to be a minor, non-fundamental component of a job she purportedly did for nearly five years.[13]  But whether Claimant's past work was a composite job or how much of the time she performed the least demanding aspect of her job is not for this court to decide.  *See Carroll v. Kijakazi*, 2023 WL 8878552, at *6 (E.D. Cal Dec. 22, 2023) ("[T]he Court cannot determine if the ALJ categorized Plaintiff's past work . . . according to its least demanding function or if she correctly applied the 'generally performed' test.").  And because the ALJ did not consider the evidence contained in the Post-Decision Affidavit, resulting in what appears to be a misclassification of Claimant's past relevant work, the court cannot conclude that substantial evidence supports the ALJ's written decision.

## C.    Harmless Error

During oral argument—for the first time—the Commissioner claimed that even if there was a misclassification of Claimant's past relevant work, any error was harmless.  That is, the Commissioner appears to argue that if Claimant

---

[13]   And with the evidence before the ALJ at the time he rendered his decision—that is, without having considered the Post-Decision Affidavit—it is not likely that he would have considered Claimant's relevant past work a composite job.

could not perform her past relevant work (as a result of taking into consideration

Claimant's Post-Decision Affidavit), the VE's testimony established that she could

perform other sedentary work.  Put in terms of the five-step sequential analysis, the

Commissioner appears to claim (or, at least, did so during oral argument) that even

if the Claimant did not possess the residual functional capacity to perform her past

relevant work at Step 4, she had the residual functional capacity to allow her to

perform sedentary work that exists in significant numbers in the national economy

at Step 5.  But, as explained in *Bray v. Commissioner of Social Security*

*Administration*, 554 F.3d 1219 (9th Cir. 2009), an ALJ cannot make such a

determination at Step 5 without making findings of fact as to the transferability of

Claimant's skills.[14]  The court cannot simply assume such facts exist.

In *Bray*, the ALJ found—based on VE testimony that although

claimant could not do her past relevant work she had transferable skills and could

transition to other work—that the claimant was not disabled at Step 5.  554 F.3d at

1223.  *Bray* held that even when the ALJ relies on VE testimony, he or she must

make specific findings of fact as to whether the claimant possesses transferable

---

[14]   The Commissioner may have abandoned this argument.  Although the court ordered supplemental briefing from the parties on this narrow issue of potential harmless error, the Commissioner's brief failed to address—in any manner whatsoever—the very harmless error issue raised during oral argument.  *See* ECF No. 18 (failing to even include the phrase "harmless error" anywhere in the briefing).  Instead, the Commissioner's supplemental brief reiterated what was in his initial briefing—that substantial evidence supported the ALJ's determination at Step 4 that Claimant had the residual functional capacity to perform her past relevant work.

skills, as required by SSR 82-41, 1982 WL 31389 (S.S.R. Jan. 1, 1982).  *Id*. at

1224–26.  This regulation provides:

> When the issue of skills and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision.  Findings should be supported with appropriate documentation.
>
> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision. . . . It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

*Id*. at 1223 (quoting SSR 82-41, 1982 WL 31389, at *7).  *See also Barnes v.*

*Berryhill*, 895 F.3d 702, 707–08 (9th Cir. 2018) (holding that even where no

Medical-Vocational Guideline provides that a person of the claimant's age,

education level, and work history is disabled absent transferable skills, the ALJ is

still required to make transferability of skills findings of fact under SSR 82-41).

*Bray* additionally points out that under the Medical-Vocational Guidelines

("Guidelines"),[15] "[i]n order to find transferability of skills to skilled sedentary

---

[15]   There are two ways for the Commissioner to meet the burden at Step 5 of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by VE testimony; or (2) by reference to the Guidelines.  The Guidelines "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101). The ALJ consults the Guidelines at the administrative level, subject to certain requirements.  *See id*. at 1115.

work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(f).

Here, the ALJ made no findings of fact at Step 5.  And absent making the findings required by *Bray*, the court cannot find harmless error.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the court REVERSES the Commissioner's final decision and REMANDS this action for further proceedings consistent with this Order.  The Clerk of Court is instructed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 21, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*McCullough v. O'Malley*, Civ. No. 23-00298 JMS-KJM, Order Reversing the Administrative Law Judge's Decision and Remanding for Further Proceedings